***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Jones, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 12 April 2002 as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and defendant-employer.
3. Key Risk Insurance Company is the carrier on risk.
4. The plaintiff's average weekly wage was $271.25.
5. Industrial Commission Forms and filings relevant to this case were stipulated into evidence as portions of Stipulated Exhibit 1 and Stipulated Exhibit 2.
6. The plaintiff's medical records were stipulated into evidence as portions of Stipulated Exhibit 1 and Stipulated Exhibit 2.
7. The issues before the undersigned are: (i) whether the plaintiff sustained an injury by accident on April 6, 2001; (ii) whether the plaintiff contracted an occupational disease arising out of and in the course of her employment with defendant-employer; and (iii) if so, what compensation, if any, is due the plaintiff?
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. The plaintiff was employed as a Certified Nursing Assistant whose duties included feeding residents, dressing residents, transferring residents from beds to chairs and chairs to beds, assisting with their going to the bathroom, making beds and taking care of other residents personal needs. The plaintiff's responsibilities varied from day to day depending upon the patient that she was providing care. The plaintiff's job did require her to lift, pull and bend.
2. On April 26, 2001, the plaintiff was performing her normal duties when assisting a resident, Nataoka Reed, to move from her bed to a chair. The plaintiff used a hoyel lift that required the plaintiff to roll the patient onto the patient's side to hook up the lift apparatus.
3. The plaintiff indicated while performing this task in a manner that was normal for this procedure she felt a pull in her shoulder.
4. The plaintiff was performing her normal duties and did not slip, trip or fall during the process of moving the patient. The plaintiff's pain was immediate and was not a gradual onset of pain.
5. The plaintiff indicated Vangie Strickland was present at the time of the injury and contends Ms. Allen, the supervising hall nurse on duty, was also informed to the accident. The plaintiff indicated Ms. Allen told her on three (3) occasions she would prepare an accident report but no accident report was done. According to the plaintiff, Ms. Allen offered the plaintiff a Tylenol and the plaintiff took it. The plaintiff accompanied her mother, also a resident at the nursing center, to the doctor's office that afternoon and returned at approximately 3:00 p.m. that was at the end of her shift.
6. The emergency room report concerning the plaintiff's examination on April 27, 2001 indicated she had been experiencing pain for two (2) days prior to the injury.
7. Ms. Allen, the nurse in charge, had two (2) discussions with the plaintiff during which the plaintiff never indicated any injury at work but indicated she was having some problems in her right shoulder that may have come from reaching for a clothes basket. Ms. Allen suggested the plaintiff see a doctor and understood the plaintiff was going to follow-up with a physician concerning her problem.
8. Ms. Allen indicates she has completed other accident reports and would have done so had the plaintiff reported the incident to her. Ms. Allen indicated she was unaware that a workers' compensation claim was being filed until she heard from Ann Ballance and requested to call the carrier about the claim.
9. The plaintiff indicated she awoke in pain and immediately went to the Franklin Regional Hospital between 7:30 and 8:00 a.m. The plaintiff then went to Dr. King but was not examined. The plaintiff was referred to Dr. Wheeless. Dr. Wheeless ordered an MRI that showed a rotator cuff tear. Dr. Wheeless performed surgery on the plaintiff in June 2001.
10. The plaintiff was not diagnosed with carpal tunnel syndrome until December 6, 2001.
11. Clifford R. Wheeless, M.D., initially indicated he believed the plaintiff's work placed her at an increased risk of developing a rotator cuff tear and carpal tunnel syndrome.
12. Dr. Wheeless further stated he did not know the definition of "highly repetitious."
13. The plaintiff has failed to prove by the greater weight of the evidence that the plaintiff sustained an injury by accident on April 26, 2001.
14. The plaintiff has failed to prove by the greater weight of the evidence that the plaintiff contracted occupational disease, a rotator cuff tear or carpal tunnel syndrome, arising out of and in the course of her employment with defendant-employer.
15. The plaintiff has failed to show by the greater weight of the evidence that she was placed at an increased risk of contracting a rotator cuff tear and carpal tunnel syndrome than the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The plaintiff has failed to prove by the greater weight of the evidence that she sustained an injury by accident on April 26, 2001, or that she sustained a specific traumatic incident of the work assigned. N.C.G.S. § 97-2(6).
2. The plaintiff has failed to prove by the greater weight of the evidence that she has contracted an occupational disease arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-53(13).
3. The plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C.G.S. §§ 97-2(6); 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, the plaintiff's claim for benefits under the North Carolina Workers' Compensation Act must be and the same is HEREBY DENIED.
2. Each party shall bear its own costs of this proceeding.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER